Argued March 27, affirmed May 14, 1973

DEATON, *Appellant, v.* STATE ACCIDENT
INSURANCE FUND, *Respondent.*
509 P2d 1215

*Dan O'Leary,* Portland, argued the cause for appellant. With him on the brief were Pozzi, Wilson & Atchison, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

SCHWAB, C.J.

The issue in this case is the extent of disability sustained by claimant. The resolution of it leads us to a further discussion of what 2 Larson, Workmen's Compensation Law § 57.51, refers to as the "odd-lot" doctrine which we first cited with approval in *Swanson v. Westport Lumber Co.,* 4 Or App 417, 479 P2d 1005 (1971), and to a discussion of what part a claimant's motivation to return to work plays in determining what is a proper award.

Claimant, having sustained a serious compensable injury, received an initial award of 192 degrees unscheduled disability and 30 degrees for partial loss of use of his right leg. Being dissatisfied with this award he requested and received a hearing, as a result of which the hearing officer awarded additional compensation of 48 degrees for his unscheduled disability, giving him a total of 75 percent of the maximum allowable award for an unscheduled disability, plus 30 degrees for the scheduled injury to the right leg. Being still dissatisfied, claimant took the matter to

the Workmen's Compensation Board which affirmed the hearing officer. Claimant then took the matter to the circuit court, which affirmed the action of the Board, and the matter is now before us. At all stages the claimant has contended that he is permanently, totally disabled.

Claimant is now 53 years old. He has a sixth-grade education, and an IQ in the dull-normal range. He is and for many years has been blind in one eye. During all of his productive years he worked as a manual laborer. From 1958 until the time of his accident, March 26, 1970, he worked for the same employer. On March 26, while working as a timber faller, he was injured when the root wad of a windfall tree he was attempting to cut rolled over him. He sustained a right pneumothorax with a suspicion of a right tenth rib fracture. Additionally, he sustained compression deformities of L2, a fracture of L3 and a suspected fracture of L1. A laminectomy at L2-3 was performed, and then a four-level spinal fusion was carried out. At the time of the surgery it was noted that the transverse process of L2, 3 and 4 of the right side were fractured and a protruding disc was also removed at the L2-3 space. Dr. C. E. Baker, who performed the surgery, indicated in his final report that claimant stated that he could not at that time return to any kind of productive work because of persistent back distress, but Dr. Baker did not express any opinion as to the extent of disability. The doctor did, however, state that he had communicated with the Division of Vocational Rehabilitation, requesting that the claimant be considered for job retraining.

On May 13, 1971, claimant enrolled in the Physical Rehabilitation Center for a period of two weeks. A psychological examination administered at the

Center by Dr. Norman Hickman indicated that the claimant had no vocational ideas and seemed little inclined to return to any type of gainful employment. The psychologist concluded that claimant was suffering from psychological problems which hindered his rehabilitation. It was the psychologist's opinion that the diagnosed psychopathology was basically chronic in nature, although it appeared to have been aggravated moderately by the injury. Dr. Hickman stated that the claimant could not be considered cooperative during the testing, and concluded that the psychological outlook for successful rehabilitation was poor.

The Center's physical evaluation included: "[P]hysical therapy reported that the patient does not show any abnormalities of gait or marked limitation or awkwardness of movement. He can ride the bicycle and use the treadmill for periods up to five minutes and has no difficulty going up and down the stairs," and "* * * it was doubtful that the patient intended to increase his participation in the program." The Rehabilitation Center's medical discharge summary concluded that there was a "moderate physical disability demonstrable at the time of discharge from the center," and that "the industrial accident is responsible for a moderate aggravation of pre-existing psychopathology. The degree of psychopathology due to the industrial accident should not be permanent if this man is satisfactorily re-employed."

The claimant was then assigned to the local Division of Vocational Rehabilitation near his home as of August 9, 1971. He was there interviewed on September 8, 1971, at which time he indicated that his case should be closed because he felt "unable to participate due to his deteriorating physical condition." He gave as an additional reason for his position the

fact that he had received a settlement from the Workmen's Compensation Board and was receiving Social Security disability benefits. The Physical Rehabilitation Center acceded to his request and closed his case.

On September 11, 1971, claimant was examined by another psychologist who concluded that because of the diffuse physical injury and the patient's mental attitude his prognosis for rehabilitation was poor.

On January 12, 1972, claimant was examined by a psychiatrist, Dr. Guy Parvaresh. Dr. Parvaresh found no causal relationship between the industrial accident and claimant's personality problems. His report concluded:

"* * * It is my further belief that frankly Mr. Deaton's income at this time seems to be either equal or more than what he could make in the light of his limited education in the competitive market. Therefore, there is no genuine motivation to be gainfully employed."

The claimant has offered no evidence that he has sought employment; the Fund has offered no evidence that suitable employment is available to the claimant. The claimant argues that under the facts of this case he comes within the odd-lot category regardless of his motivation to return to gainful employment and, in the alternative, that if motivation is a material factor in determining whether he comes within the odd-lot category the evidence shows that he has demonstrated the necessary motivation. The Fund argues that a showing of motivation on the part of a claimant to return to work is always a prerequisite to bringing him within the odd-lot category and that the evidence in this case shows that the claimant does not have such motivation.

■ The odd-lot doctrine is a rule which permits a finding of total disability in a situation in which claimant is less than a "basket case"—where he is not altogether incapacitated for any kind of work, but still is so handicapped that he will not be able to obtain regular employment in any well-known branch of the labor market. 2 Larson, Workmen's Compensation Law § 57.51.

> "* * * The essence of the test is the probable dependability with which claimant can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps." 2 Larson, supra, § 57.51.

Larson recognizes that the chief problem in applying the odd-lot test centers upon the question of with whom lies the burden of proving the availability or unavailability of work in cases where the medical evidence alone does not clearly establish a claimant's inability to be gainfully employed.

> "In many of these cases, the central issue becomes one of proof: How is unavailability or availability of work shown, and who has the burden of proof? Must the employee prove the unavailability of suitable employment to one in his condition, by evidence of actual attempts to obtain a job or by evidence of employment conditions in that vicinity, or must the employer affirmatively show the availability of the kind of jobs that claimant can still perform? * * *." Larson, supra, § 57.61.

Larson suggests the solution as:

> "A suggested general-purpose principle on burden of proof in this class of cases would run as follows: If the evidence of degree of obvious physical impairment, coupled with other factors such

as claimant's mental capacity, education, training, or age, places claimant *prima facie* in the odd-lot category, the burden should be on the employer to show that some kind of suitable work is regularly and continuously available to the claimant * * *." Larson, supra, § 57.61.

We adopted both Larson's general statement of the odd-lot doctrine and his suggested principle on the burden of proof in *Swanson v. Westport Lumber Co.,* supra. Larson does not directly deal with the issue of motivation; however, we have dealt with it in previous opinions, as has the Oregon Supreme Court. In *Jenness v. SAIF,* 8 Or App 95, 493 P2d 73 (1972), we found that claimant was entitled to permanent total disability status under the odd-lot doctrine even though he refused to participate in a recommended physical rehabilitation program. The thrust of that opinion, although it did not specifically so hold, is that when it is apparent from a claimant's physical condition, plus all the other relevant factors, that he is unable to work at any suitable and gainful employment, motivation is immaterial, because it appears unlikely that even with the best of motivation could he obtain and retain such employment.

■■ In *Wilson v. Gilchrist Timber Co.,* 6 Or App 104, 487 P2d 104 (1971), we denied total disability status to a claimant because he refused measures that might have restored to him the physical ability to work. To the same effect see *Surratt v. Gunderson Bros.,* 259 Or 65, 485 P2d 410 (1971). The consistent thread of all these opinions and others cited therein is that (1) motivation is not necessary to establish a *prima facie* case of odd-lot status if the medical facts when considered along with other factors, such as age, education, mental capacity and training of themselves

support the claimed inability to work, and (2) evidence of motivation to seek and work at gainful employment is necessary to establish a *prima facie* case of odd-lot status if the injuries, even though severe, are not such that the trier of fact can say that regardless of motivation this man is not likely to be able to engage in gainful and suitable employment. The burden of proving odd-lot status rests upon the claimant.

■ The case at bar is one of severe injuries and presents a close factual question as to the category in which the claimant falls. Nevertheless, we think the preponderance of the evidence is that the claimant comes within the latter category and, hence, agree with the Closing and Evaluation Division, the hearing officer, the Board and the circuit judge that the claimant has not sustained the evidentiary burden necessary to bring himself within the odd-lot category.

Affirmed.