Argued October 9, affirmed November 19, 1973

NEWLIN, *Appellant, v.* STATE ACCIDENT
INSURANCE FUND (No. 32443),
*Respondent.*

515 P2d 1360

*Dan O'Leary,* Portland, argued the cause for appellant. With him on the briefs were Pozzi, Wilson &
Atchison, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and TANZER, Judges.

FOLEY, J.

In this workmen's compensation case the Closing and Evaluation Division awarded claimant 48 degrees for neck and left shoulder unscheduled disability and 10 degrees for partial loss of the left arm. The hearing officer increased the award 80 degrees to 128 degrees for the unscheduled disability and approved the 10 degrees for the left arm. The Workmen's Compensation Board affirmed the hearing officer and the circuit court affirmed the Board's order. Claimant appeals to this court, claiming she should be awarded permanent total disability.

Claimant, then 61, was injured November 8, 1970, while working at a North Bend nursing home when helping lift a heavy patient. She was subsequently referred by her doctor to a neurosurgeon, who, after routine conservative treatment, performed a laminectomy in the cervical area on February 9, 1971. Postoperative examination on March 16, 1971, revealed continued pain in the right shoulder and upper arm area and pain, stiffness and moderate restriction in her neck movements. In the claim closure examination by the neurosurgeon on May 18, 1971, claimant stated: "I'm not hurting as bad as I did." At that time the doctor recommended claim closure and stated:

"* * * There is moderate subjective and objec-

tive evidence of permanent partial disability involving the cervical spine and left arm related to her industrial injury of November 8, 1970 and manifested by cervical pain and stiffness as well as left arm pain, stiffness and decreased durability."

Claimant was examined again on March 29, 1972, by the same neurosurgeon who was of the impression that her condition had not materially changed since May 18, 1971. He did not believe at that time that she was able to return to her previous job and did not think she was capable of sustained, gainful employment requiring repeated left arm exertion.[1] She was then, on June 10, 1971, by Determination Order by the Closing and Evaluation Division awarded 48 degrees for unscheduled neck and left shoulder disability and 10 degrees for partial loss of the left arm. She requested a hearing and the hearing officer, after considering her testimony and recent medical reports of her condition including the above-mentioned report of the treating neurosurgeon and another neurosurgeon who examined her on April 14, 1972, increased her unscheduled disability award from 48 degrees to 128 degrees. Claimant urged before the hearing officer, and continues to urge, that she is in the "odd lot" category and should be awarded permanent total disability. The neurosurgeon who examined her on April 14, 1972, stated:

"* * * It is my opinion that she is not totally disabled, but could perform some employment not requiring lifting. I believe that her condition is

[1] Her treating neurosurgeon reported on claimant's self-assessment of her inability to work:

"She feels that she is definitely unable to work because of inability to use the left hand and arm. She is drawing disability from State Accident Insurance Fund and Social Security. She was refused a veteran's pension because she was drawing 'too much' already from others."

medically stationary and does not require further investigation or treatment."

A clinical psychologist did a psychological evaluation of claimant in November 1971, the results of which appear in his deposition. He developed in the history which he took that she had done many kinds of work, including driving a truck for two and one-half years during World War II, assembly work, packing at Armour's meat company, restaurant work, waiting on tables and cooking, and in motels as a maid. In later years she worked in a nursing home. He believed that although she possessed generally average visual motor skills for her age, her academic skills were limited and her physical condition precluded any kind of heavy labor. These handicaps, coupled with her age and with her psychological stress, he felt made her unemployable. In connection with the visual motor skills he said:

"* * * [They] deteriorate pretty rapidly after the age of, oh, fifty, fifty-five, so that it is hard to know how much may be due to injury and how much is just an aging process."

When asked whether claimant had attempted to return to work he stated that he did not know whether she had or not.

At the hearing before the hearing officer, in response to questions about working, claimant testified on direct examination:

"Q. Do you think you could be up and on your feet, working for eight hours a day, five days a week?

"A. I don't know if I could or not. I know it would hurt me to. I'm afraid I couldn't do it."

And on cross-examination she testified:

"Q. Okay. Have you attempted to work for wages anywhere else?

"A. No.

"Q. And your reason for that is that you don't think you can?

"A. I'm pretty sure I couldn't."

■ The burden of proving odd lot status rests on the claimant. *Deaton v. SAIF*, 13 Or App 298, 509 P2d 1215 (1973). The hearing officer who heard and observed the claimant concluded that the neurosurgeon who last examined claimant best described her appearance and condition. He said:

"Although he is not the treating physician, I conclude that [the neurosurgeon] best describes the appearance and condition of the claimant. She has received recommendations from two physicians to not return to her regular work at the nursing home, involving the continuous use of her left arm. Claimant argues that with her age, education, background, this places her in the odd lot doctrine [category]. While this is argueable [sic], I am not so persuaded. Claimant has had a difficult life, and it appears that the industrial accident has been timely to permit the workman to cease hostilities with the employment world. She nevertheless has a very real disability which I fix at 120 [128] degrees for unscheduled neck and left shoulder, an increase of 80 degrees for the unscheduled area. I leave the Determination Order of 10 degrees for partial loss of the left arm undisturbed."

■ While we consider it a close, factual question whether claimant should be considered to be of odd lot status, we think the evidence preponderates in the findings of the hearing officer (who saw and heard the claimant), the Board and the circuit court that she is not.

Affirmed.