Argued March 27, reversed and remanded April 22, 1974

HOBBS, *Respondent, v.* STATE ACCIDENT
INSURANCE FUND, *Appellant.*

521 P2d 359

*Jim G. Russell,* Assistant Attorney General, Salem,
argued the cause for appellant. With him on the brief

were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Roy Kilpatrick,* John Day, argued the cause for respondent. With him on the brief was Milo W. Pope, Milton-Freewater.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

This is an appeal by the State Accident Insurance Fund (SAIF) from a judgment of the circuit court reversing the determination and award of partial disability by the Workmen's Compensation Board and the hearing officer, and awarding claimant permanent total disability.

On appeal SAIF asserts that the facts do not support a finding of total disability and urges that we reinstate the award of the hearing officer and Board, which awarded claimant 80 degrees unscheduled low back disability.

The claimant was employed as a school cook. On May 11, 1971, while carrying an armload of boxes to a trash can, claimant tripped over a misplaced bicycle and landed on her buttocks. The evidence established that a spondylolisthesis (forward displacement of a lumbar vertebra) of the lumbo-sacral joint was either caused or rendered symptomatic by this accident.

Although claimant was not hospitalized at the time of the injury, she suffered considerable pain in her low back and legs. She failed to respond to normal forms of therapy. Her personal physician, Dr. Bittner, re-

ferred her to an orthopedic surgeon, Dr. Smith, who hospitalized her for traction on or about August 4, 1971. She improved slightly between August 13 and November 18, 1971, when she began to suffer increased pain. On November 18, in response to an inquiry from SAIF, her doctor indicated that claimant was not "ready to consider for Vocational Rehabilitation [by SAIF] as yet." In January 1972, after she had more pain symptoms, claimant was fitted with a back brace, which seemed to help.

On June 27, 1972, claimant applied for disability benefits under the Public Employes Retirement Act, and on August 18 she applied for disability benefits under the Social Security Act. Thereafter, on August 25, her doctor reported a sharp increase in claimant's pain following an attempt to return to more complete activity.

On September 25, 1972, SAIF recommended that steps be taken to close the claim so that claimant might find light or part-time work. Claimant reported that while she could do her housework, she could not do any strenuous work or even bend without experiencing severe pain and prolonged aftereffects. Her doctor was of the opinion that a lumbo-sacral fusion would be necessary to stabilize her back before she could return to work of the type she was performing at the time of the injury.

A physical examination by SAIF showed the following: That she performed heel and toe walking only with difficulty; that she could bend forward only until her fingers were about 12 inches from the floor; and that her backward extension was approximately 30 per cent of normal.

On the basis of the foregoing, claimant, on October 5, 1972, was awarded 48 degrees for 15 per cent unscheduled low back disability. Claimant, being dissatisfied with this award, thereupon requested a hearing.

On December 19, 1972, she was examined by another orthopedic physician at her request. The report of this examination contained the following: That claimant walked without a limp and could sit and arise from a chair without difficulty; that her heel and toe walk was performed satisfactorily; that she could bend forward until the fingertips were within 10 inches of the floor; that she could recover to the erect position easily; that extension was uncomfortable; that her low back and leg symptoms were aggravated by lifting, working with her arms overhead, housework, or riding in an automobile for an hour or so; that relief was obtained by lying down on the floor with knees elevated or supported on a chair with hips flexed; that these symptoms diminished after an hour or so; that pain was rarely experienced at night, and she was invariably asymptomatic for an hour or two in the morning; that symptoms gradually increased and she was never without pain in the latter part of the day; that symptoms were relieved with heat; and that she took no medication except an occasional aspirin which had little effect. The doctor considered further substantial improvement doubtful, with future surgery a definite consideration. He was of the opinion that claimant possessed a partial disability, particularly in performing work involving bending or even modest lifting.

At the hearing held on April 3, 1973, claimant testified that she was 41 years old, a high school graduate and married to an electrical engineer. She also had worked as a merchandise checker and worked in the

delivery and catalog departments of Montgomery Ward; and that she knew how to type but had not typed for years.

She further testified that she is bothered by driving or riding in an automobile; that she cannot sit or stand for very long, but finds it easier to stand than to sit if she moves around; that she can cook, wash and iron, take down curtains and carry them downstairs to the laundry, and clean pretty extensively, but she is bothered by heavy household chores such as moving furniture, mopping floors and often some vacuuming; that too much activity causes severe pain in the low back and legs with aching and an uncomfortable tingling sensation in the legs; that this may last as long as two days but usually begins to go away within an hour or two with the application of heat and lying on her back with legs elevated; that she lifts and carries groceries and the laundry; that she suffered an exacerbation of symptoms in the autumn of 1971 by moving and attempting to catch and lift a falling grandchild whose weight was estimated at a bit less than 25 pounds.

Claimant also testified that she wears the support brace only three or four times a week, for approximately four or five hours at a time, when she is doing something like washing a window or moving something; that she takes no regular medication; that walking is her only exercise and she walks about one-half mile a day; that she does not know how long she could stand while moving; that she does not know if she could work because she has not tried anything. Claimant testified that she refused the operation because there was no guarantee that she would be any different; that she

could walk now, was no stranger to pain, and the pain was not really very bad.

When asked if she was willing to go to school for retraining of any kind, claimant indicated that she would do anything she could to help herself but doubted if she was employable with her bad back. She testified that she had not contacted the Division of Vocational Rehabilitation and was not told that she could. Claimant, on the advice of her attorney, declined to go to the Disability Prevention Division of the Workmen's Compensation Board for physical, psychological and vocational evaluation. Her attorney explained that in his experience he had found the Division to be consistently biased in favor of SAIF, and that this often adversely affected SAIF"s subsequent awards. The hearing officer concluded that SAIF's award of 15 per cent (48 degrees) was insufficient and increased it to 25 per cent (80 degrees). This award was affirmed by the Board. On appeal by claimant, the circuit court found claimant to be permanently and totally disabled.

■ After reviewing the entire record it is our conclusion that the findings and judgment of the circuit court that claimant is permanently and totally disabled must be reversed.

First, the medical evidence does not support a finding of permanent and total disability. We find nothing in Dr. Smith's reports to indicate such disability. Although he recommended that she not return to heavy work, he recommended that her claim be closed in order for her to find light work. Dr. Snell indicated that claimant possessed only a partial disability.

Second, at the hearing, claimant's own testimony

fails to establish permanent total disability. She is able to do most of her housework, including laundry, climbing stairs, taking down and putting up curtains, washing windows and cooking, and she walks regularly. She testified that she had no idea if she could work because she had not tried anything. She also stated that one of her main reasons for her unwillingness to undergo the spinal fusion recommended by her doctors was that her condition was really not that bad.

■ It is true, as claimant asserts in her brief, that where the evidence establishes permanent total disability the employer (or SAIF) has the burden to show that "some kind of suitable work is regularly and continuously available to the claimant." *Deaton v. SAIF,* 13 Or App 298, 304, 509 P2d 1215 (1973). Claimant, however, must first establish that she is permanently and totally disabled. *Swanson v. Westport Lumber Co.,* 4 Or App 417, 479 P2d 1005 (1971). Here the record does not show that claimant is physically incapable of, and could not be trained for, lighter work. Claimant, therefore, does not fit into the 'odd lot' category, *Maumary v. Mayfair Markets,* 14 Or App 180, 512 P2d 1370 (1973). *Cf. Swanson v. Westport Lumber Co.,* supra; *Mansfield v. Caplener Bros.,* 10 Or App 545, 500 P2d 1221 (1972). Claimant is in her early middle years, and has had a high school education. She previously could type, and has done some clerking in the past. She has not seen fit to avail herself of the various vocational training and rehabilitative services provided by the state to injured workmen, which have been offered. *See, Rios v. Helms Bros.,* 12 Or App 540, 507 P2d 424 (1973), where this court, in evaluating the disability of a 40-year-old field

laborer who contended permanent total disability because of a back injury, said:

> "* * * According to his doctor his condition is now stationary, and his residual disability is such as to preclude him from doing heavy lifting or constant bending in the future. There is nothing in the record to show that he is unqualified to do lighter work not requiring heavy lifting or constant bending. Nor does the record support a finding that such work is either not available or that he, if not presently qualified for such work, is not retrainable so as to qualify * * *." 12 Or App at 543.

*See also,. Ferguson v. Wohl Shoe Co.,* 11 Or App 407, 502 P2d 1392, Sup Ct *review denied* (1972).

Claimant's injury, while partially disabling and no doubt exceedingly painful at times, cannot be classed as a permanent and total disability. We hold that the 80 degrees of permanent partial disability awarded to claimant by the hearing officer and the Board is appropriate in this case.

Reversed and remanded.