Argued March 27, reversed and remanded April 29, 1974

ROBERTSON, *Respondent, v.* STATE ACCIDENT
INSURANCE FUND (No. 391-797),
*Appellant.*

521 P2d 1088

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*John J. Haugh,* Portland, argued the cause for respondent. With him on the brief were O'Connell, Goyak & Haugh, P.C., Portland.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

Respondent workman, now 69 years of age, sustained an on-the-job injury to his back July 11, 1970. The Closing and Evaluation Division awarded him 64 degrees permanent partial disability; the hearing officer awarded 128 degrees; the Workmen's Compensation Board awarded 192 degrees; and the circuit court awarded permanent total disability. The State Accident Insurance Fund appeals.

The claimant contends that the evidence establishes a prima facie case of permanent total disability under the odd-lot doctrine (*Swanson v. Westport Lumber Co.,* 4 Or App 417, 479 P2d 1005 (1971)), and that the circuit court was therefore correct in its conclusion that he was permanently and totally disabled.

Our review, like that of each of the prior evaluations, is de novo. *Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971). The burden of estab-

lishing odd-lot status is on the claimant. *Deaton v. SAIF,* 13 Or App 298, 509 P2d 1215 (1973); *Newlin v. SAIF,* 15 Or App 378, 515 P2d 1360 (1973).

ORS 656.206 (2), as amended by Oregon Laws 1973, ch 614, § 2, now provides:

> "(2) The workman has the burden of proving permanent total disability status. Unless the medical evidence of a workman's unscheduled physical impairment, coupled with other relevant factors affecting his employability, establishes, prima facie, the workman's permanent total disability status, he must also establish his willingness to seek gainful and suitable regular employment."

In the view we take of this case we do not find it necessary to determine whether the 1973 Act applies to injuries occurring prior to its effective date.

Following his admitted on-the-job injury at Multnomah Plywood Company[1] a laminectomy at the L4-L5 inspace was performed by Dr. Frederick L. Goodwin in September 1970. Dr. Goodwin, who remained the treating physician, following his final examination of claimant recommended early in 1972 that the claim was ready for closure. Testifying by deposition, he stated:

> "I would say that when I saw him on January 11, 1972, his physical condition in the parts that we were concerned with, you see, would not preclude— would not preclude his employment in office type work."

It is clear from his testimony not only that he did not consider that claimant was permanently and

---

[1] The employer corporation was a cooperative. An official testified that it was company policy to allow a member to work after reaching 65 at any job he was qualified under company rules to perform, if he so desired.

totally disabled, but he also wrote, on January 11, 1972, "that the Back Evaluation Clinic's report be accepted for a closing exam on this patient."

After examination by the Back Evaluation Clinic, that agency reported:

> "Recommendations: It is our feeling that no orthopedic or neurological, surgical, or diagnostic procedures are indicated at this time. We recommend that the patient go on a weight reduction program and wear elastic stockings especially on the right lower extremity to control the swelling that he is having secondary to his venous insufficiency. We do not feel that he should return to his work in the lumber mill, but since he is a qualified accountant there would be no reason why he could not go back and perform this type of activity. We recommend discharge from the Physical Rehabilitation Center and closure of his claim. We feel that he can follow up with Dr. Goodwin for any fur[ther] difficulty he has with the continued use of his support. We rated his disability as being minimal."

Dr. James Mason, Medical Examiner for the Workmen's Compensation Board's Physical Rehabilitation Center, reported:

> "A change of occupation appears to be definitely advisable; although this may not be feasible, by reason of this man's poor musculature and physical condition, as well as the residuals of his low back strain and postoperative residuals. It is obvious that he should not return to manual work, but he has a lot of experience in office work, which still could be utilized. * * *"

The report from the Physical Rehabilitation Center included the following:

> "PSYCHOLOGICAL EVALUATION: The psychological evaluation reveals that this man has

bright normal intellectual resources in both the verbal and the non-verbal areas. He feels that he will not be able to return to his former type of work and indicated that his physician had suggested retirement. However, the patient verbalized an interest in returning to work in the field of public accounting, if it is feasible at his age. His measured vocational interests support his vocational choice, and he has relatively good aptitudes as well. Furthermore, the patient has many excellent intellectual and personality resources which can be utilized in his restoration and rehabilitation if he seriously contemplates further work. At this time he is experiencing a moderate anxiety tension reaction with depression, and he is reacting to some of his symptoms in a rather hypochondriacal fashion. Whether he retires, or attempts to continue working, will depend largely on his physical condition. Psychological factors should not seriously interfere with his return to work.

"* * * * *

"COMMENT: It is the consensus of the Discharge Committee that this man is eligible for vocational rehabilitation services on the basis of physical factors directly related to an industrial accident. Although he demonstrated only a minimal physical disability, the Committee feels that this man should not return to his former type of work because of the probability of aggravation of his existing disability and recurrence of symptoms. Psychologically he is considered a fair candidate for rehabilitation. The patient was seen by the local DVR office in Portland, but no application for their services was taken, since the patient stated he felt he could not return to work. His physical condition is considered stationary, and claim closure is recommended."

Dr. Max Reed, a clinical psychologist who worked in the field of vocational capacities, called by claimant,

however, concluded that the claimant was permanently and totally disabled. He explained:

"Q [By attorney for claimant] What are your reasons, just briefly, for that?

"A Well, in addition to the concentration and physical difficulties, problems—I would specify the concentration problems which result first from pain which occurs frequently, but also from the necessity to use medications that interfere with concentration, make him sleepy, dull, ineffectual—he's unable to work anything like a full day in either a sitting position or a standing position without getting rest. So that there simply are not any kinds of jobs available requiring even approximately, even half time that he would not have to get some special consideration for."

The hearing officer in his opinion pointed out:

"Claimant contends that he is entitled to an award of permanent total disability. He presented evidence from a clinical psychologist, Dr. Max R. Reed, Ph.D., who specializes in employment availability. Dr. Reed testified that the claimant was unemployable. However, the rationale of his conclusion is not entirely acceptable. He felt that much of claimant's problem was due to the medication he was taking and the side effects produced. Dr. Goodwin testified in Claimant's Exhibit 3 that the medication claimant was taking could be changed to medication that would not have such side effects. It is apparent from Dr. Goodwin's testimony that he was unaware the medication was affecting claimant in this fashion."

The record is silent as to whether claimant ever sought such changes, or, if so, the effect thereof.

The claimant is a well educated man, having completed three years of college, and possesses good intellectual qualifications. In addition to fifteen years experience in his earlier working years in the banking

field, he is a licensed public accountant in the state of Washington, equivalent, according to him, in that state, to a certified public accountant, with considerable experience in the tax field. By his own testimony he has kept up with the income tax laws while working at Multnomah Plywood Company.

Since the surgery in 1970, claimant has not been gainfully employed. He acknowledges:

"* * * [T]hat I have had several people who knew my background, and I have this license in Washington, to have me come in during their income tax rush season and help them. But I had to refuse it because I just knew from my own experience at home that I just wasn't able to handle it.

"Q [By attorney for SAIF] Have you ever considered attempting to work as an accountant with both a sit-down and a stand-up desk that you might be able to work between?

"A Well, I don't consider it practical in my condition. No, sir, I haven't considered it."

Claimant further testified during cross-examination:

"Q About how long can you stand on your feet other than just walking? About how long do you think you can stand on your feet?

"A Well, now, gee, I can't answer that. I have no trouble standing other than once in awhile having to balance myself or support myself. I have no trouble standing. And I have no trouble walking slowly. But I can't walk fast, and I just don't have control of my left hip and leg.

"Q What about driving?

"A I have no trouble driving a car with an automatic transmission."

■ ■ As pointed out above, ORS 656.206 (2), subject to an exception not relevant here, expressly pro-

vides that a workman seeking an award of permanent total disability *"must also establish his willingness to seek* gainful and suitable regular employment." (Emphasis supplied.) Whether viewed under the present statute or under the rule of *Deaton* and *Newlin,* both supra, we conclude that a claimant has the burden to show the requisite willingness to seek appropriate employment. Not only did claimant refuse offers of employment, for which he was clearly qualified by training and experience, because he "just felt he wasn't able to handle it," but he made no application to the Department of Vocational Rehabilitation for its retraining services "because he felt he could not return to work." Yet he knew that the Physical Rehabilitation Center concluded that he "demonstrated only a minimal physical disability," and that "psychologically he is considered a fair candidate for rehabilitation."

Accordingly, we conclude that the claimant has failed to sustain his burden of proving that he is totally and permanently disabled.

In *Hobbs v. SAIF,* 17 Or App 253, 521 P2d 359 (1974), we said:

> "* * * Claimant, however, must first establish that she is permanently and totally disabled. *Swanson v. Westport Lumber Co.,* 4 Or App 417, 479 P2d 1005 (1971). Here the record does not show that claimant is physically incapable of, and could not be trained for, lighter work. Claimant, therefore, does not fit into the 'odd lot' category. * * *" 17 Or App at 259.

The order of the Workmen's Compensation Board awarding claimant 192 degrees permanent partial disability should be reinstated.

Reversed and remanded.