Submitted on record and briefs April 19, modified May 6, 1974

## BLACKFORD, *Respondent, v.* STATE ACCIDENT INSURANCE FUND (No. 42465), *Appellant.*

521 P2d 1092

Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Jim G. Russell, Assistant Attorney General, Salem, for appellant.

J. David Kryger and Emmons, Kyle, Kropp & Kryger, Albany, for respondent.

Before LANGTRY, Presiding Judge, and FOLEY and THORNTON, Judges.

LANGTRY, P. J.

Claimant injured his back in January 1971 and again July 15, 1971 while working as a painter. Since the second injury he has not returned to work. He was 61 years old at the time of his injury. The issue on appeal is whether claimant is entitled to an award of permanent total disability.

A hearing was held August 2, 1972 and by order of the hearing officer claimant's award was increased from lesser determination orders to 160 degrees (50 percent) permanent partial disability. The Workmen's Compensation Board affirmed. The circuit court found him permanently totally disabled. State Accident Insurance Fund appeals that judgment order.

The hearing officer and the circuit judge both reviewed the medical evidence, which reflected examinations and treatment by a total of four physicians. They support a conclusion of disability. The problem is how great the disability is.

One doctor recommended a spinal fusion, but another rejected it because of claimant's age. One physician expressed the thought that claimant's subjective complaints far outweigh what can be explained by objective findings, and said proper motivation and a good course of physical activity could increase his physical abilities.

Claimant has for 40 years been a painter and has little education or ability except as a painter. He has not worked since the July 1971 injury, and testified to extreme pain and inability to physically do much of anything. After claimant had testified, an investigator showed a film taken of claimant working in his garden on May 25, 1972. We have viewed the film. Claimant is shown as doing, actively, garden duties that he had testified he had not done and could not do. We agree with the hearing officer that claimant's credibility "deserves less than full credit * * *." In fact, we think his credibility was destroyed. The circuit judge felt the pictures indicated some "limited agility." He gave greater weight to the medical evidence and did

not feel the pictures contradicted that evidence. He concluded that claimant falls in the "odd-lot" category and is entitled to permanent and total disability.

■ The test for determining degree of disability resulting from an unscheduled injury, such as claimant's back injury, is loss of earning capacity. *Surratt v. Gunderson Bros.,* 259 Or 65, 485 P2d 410 (1971). Where the unscheduled injury results in a complete loss of earning capacity, i.e., where he is rendered incapable of performing work of a gainful and suitable occupation, claimant is entitled to an award of permanent total disability, ORS 656.206 (1) (a); *Surratt v. Gunderson Bros.,* supra, 259 Or at 69; *Deaton v. SAIF,* 13 Or App 298, 509 P2d 1215 (1973); *Swanson v. Westport Lumber Co.,* 4 Or App 417, 479 P2d 1005 (1971). The burden to establish permanent total disability is on the claimant. *Deaton v. SAIF,* supra.

■ The "odd-lot" doctrine is used to describe the existence of a prima facie case of permanent total disability. *Deaton v. SAIF,* supra. The determination of "odd-lot" status is thus a determination of whether claimant's loss of earning capacity is indeed total.

■■ Loss of earning capacity is measured by considering the effect the physical injury has upon the claimant, and necessarily requires taking into account his intelligence, education, trainability, age, and general suitability to the existing job market. Motivation to seek employment may also be a relevant factor in determining total disability where the other factors are not conclusive:

"* * * (1) [M]otivation is not necessary to establish a *prima facie* case of odd-lot status if the medical facts when considered along with other factors, such as age, education, mental capacity and

training of themselves support the claimed inability to work, and (2) evidence of motivation to seek and work at gainful employment is necessary to establish a *prima facie* case of odd-lot status if the injuries, even though severe, are not such that the trier of fact can say that regardless of motivation this man is not likely to be able to engage in gainful and suitable employment. The burden of proving odd-lot status rests upon the claimant." *Deaton v. SAIF*, supra, 13 Or App at 304-5.

Where claimant cites his present unemployed status as evidence that he is incapable of obtaining "gainful and suitable employment," the question of his sincerity in seeking such employment is highly relevant.

■ In the case at bar there is conflicting evidence as to the degree of physical impairment claimant has suffered. The claimant's testimony and the medical opinions, which, of course, are partially based on claimant's description of his symptoms to the doctors, are at variance with the activities claimant performed in the movie exhibit. Based on the evidence of the extent of physical injury alone, claimant has failed to establish his permanent total disability.

In addition, there is a paucity of evidence in the record relating to claimant's mental capacity, trainability and otherwise general suitability to the general job market. Claimant presented some evidence that his age, third-grade education, lack of reading skill and lack of experience coupled with his incapacity as shown by the medical evidence to return to his former job would support a conclusion that there is no "gainful and suitable employment" available to him. A retired vocational counselor testified at the hearing that it was his opinion claimant was unemployable. However, this evidence was scanty. There was no satisfactory evi-

dence that claimant lacked reading skill, or could not learn a new skill. Dr. Kimberley in his report referred to claimant as a "superior" individual. Claimant testified he had not sought other employment or retraining, and it is apparent from the record that before the injury his principal motivation had been to retire at age 62 and do minimal amounts of work to supplement social security. We conclude claimant has failed to establish that he has no potential earning capacity.

Having ruled out an award of permanent total disability the question remains: What degree of disability, what diminishment of his earning capacity, has claimant suffered? The hearing officer's award of 50 percent disability reflects a finding that the accident had cut claimant's earning capacity in half. As noted above the hearing officer, Workmen's Compensation Board and this court agree that claimant is capable of doing some light work, though not his former job. Nevertheless, the evidence also reveals that claimant was a union painter being paid over $6.30 an hour at the time of his injury. Any light work he could now obtain would pay him a substantially lesser wage as he would be without the benefits of his experience and union contract. In addition, his age will prevent him from finding a job with prospects of increased earnings at a later time. Therefore, his earning capacity has been reduced by more than 50 percent. We find that his disability award should be increased by 64 degrees, that is, 20 percent attributable to the July 15, 1971 injury.

The judgment order of the circuit court is modified, and the claimant is awarded a total of 224 degrees for permanent partial disability.