Submitted on record and briefs June 17, affirmed July 28, 1975

SUELL, *Appellant, v.* STATE ACCIDENT
INSURANCE FUND (No. 21960), *Respondent.*
538 P2d 84

D. Keith Swanson and Brown, Burt & Swanson,
Salem, for appellant.

Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Janet A. Metcalf, Assistant Attorney General, Salem, for respondent.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

The sole issue in this workmen's compensation appeal by claimant is the extent of his disability. The referee and Workmen's Compensation Board found claimant to be permanently and totally disabled; the circuit court reversed, awarding claimant 50 per cent permanent partial disability based on its finding that claimant had failed to sustain his burden of proving total disability or that he comes within the odd-lot category.

We adopt the following background statement from the referee's opinion and order:

"On April 27, 1972, claimant, then a 47 year old warehouseman, fell some 10 or 12 feet from a semi-truck while loading grain. He continued working for four or five days; then because of pain and swelling in the right leg and right hip he came under the care of D. H. Searing, M.D. Dr. Searing diagnosed severe strain of the collateral ligaments of the right knee and contusion of the right hip * * *.

"* * * * *

"In August 1972 Mark A. Melgard, M.D., a neurological surgeon to whom claimant was referred by Dr. Spady, diagnosed a probable protruded intervertebral disc. * * * Dr. Melgard opined that claimant had a 'moderate impairment as a result of his industrial injury' * * *.

"Questionable presence of a herniated disc was found by Richard F. Berg, M.D., a medical exam-

iner at the Board's Disability Prevention Division, in April 1973 * * * and by the two orthopedic surgeons and neurologist constituting the Back Evaluation Clinic in May 1973. The BEC doctors considered his disability 'mild' * * *.

"* * * * *

"* * * In November 1973 claimant was examined by William R. Parsons, M.D., a neurosurgeon, who commented:

" 'The patient has low back and right leg pain, etiology undetermined. There may be a possible lumbar disc. This patient's disability is not great enough for him to desire further diagnostic evaluation with a Pantopaque lumbar myelogram. He states in no way does he want to be operated upon and he does not want to have a myelogram' * * *.

"* * * * *

"Prior to the industrial injury claimant had no problem which minimized his ability to perform heavy duty employment. Lay witnesses who appeared in his behalf testified that prior to his injury he was a very energetic, hard working and responsible workman and that subsequent to his injury he has been incapable of performing any type of labor. Claimant's own testimony, which I believe to be true, is that by reason of severe back pain and pain in the leg he is unable to perform any substantial amount of work. He testified to being able to stand on his feet for only about 10 minutes with the leg becoming weak and numb all the way down to the foot, that he is in misery after sitting for 10 or 15 minutes, and that he now walks with a kind of half step and is unable to walk more than a couple of blocks. The intensity of the pain restricts his ability to move to the point that sometimes he has to lift his leg with his hands. He testified that in lifting an object as light as a small

breakfast room chair he feels like he is pulling apart in the low back.

"Claimant has performed no work since the industrial injury except for the few days immediately following the injury when he remained on the job. He has made some attempts to obtain light work without success.

"Psychological evaluation by Norman W. Hickman, Ph.D., a clinical psychologist, revealed poor intellectual resources, very serious educational deficiency, and that he 'did not perform particularly well' on special skill tests. * * *

"* * * * *

"The Fund argues that it is impossible to determine the level of claimant's disability without the myelographic evaluation which claimant has refused. The Fund further argues that the refusal of the diagnostic procedure is unreasonable, that the level of disability cannot be demonstrated without the diagnosis and that any increase in the award would be made without adequate medical support * * *."

The referee's report reflects that claimant had been examined by eight medical doctors since his injury. All discussed the possibility or probability of a protruded intervertebral disc, but none apparently would make a positive diagnosis without the benefit of a Pantopaque lumbar myelogram. Dr. Parsons stated in his report:

"* * * This patient's disability is not great enough for him to desire further diagnostic evaluation with a Pantopaque lumbar myelogram. * * *."

Further, none of the other doctors who discussed claimant's degree of impairment classified it as more than moderate.

■ While ORS 656.325 is inapplicable in the instant

case because the State Accident Insurance Fund did not seek termination of all compensation benefits based on claimant's refusal of a myelogram, nevertheless we believe that claimant's refusal must be taken into consideration in determining whether claimant has established that he is permanently and totally disabled.

■ Taking into consideration all factors, we conclude there is no adequate medical support for claimant's assertion that he is permanently and totally disabled, and that the preponderance of the evidence indicates that claimant is not permanently and totally disabled. We agree with the circuit court that claimant did not sustain his burden of establishing that he was permanently and totally disabled, and that claimant's disability was no more than 50 per cent permanent partial.

Affirmed.

FOLEY, J., dissenting.

The sole issue in this appeal by claimant is the extent of his disability. The hearing referee and Workmen's Compensation Board found claimant to be permanently and totally disabled; the circuit court reversed, awarding claimant 50 percent permanent partial disability based on its finding that claimant had failed to sustain his burden of proving total disability or that he comes within the odd-lot category.

I would reverse and adopt the following from the referee's opinion and order, in addition to that quoted by the majority:

"Claimant was born in Arkansas and attended school through the third grade. He has no further education or special training. He started working at age 13 helping on his father's farm. His entire work history has been one of heavy duty labor, principally farm work, including chopping and pick-

ing cotton, baling hay, and loading trucks. * * *
The farm jobs on which he worked often extended
to 12 or 13 hour days and to six day weeks. * * *
[He worked] for the employer here loading and
unloading trucks and running a cleaner for blue
grass seed * * * for approximately one month be-
fore his industrial injury.

"* * * He testified to being able to stand on
his feet for only about 10 minutes with the leg
becoming weak and numb all the way down to the
foot, that he is in misery after sitting for 10 or 15
minutes, and that he now walks with a kind of half
step and is unable to walk more than a couple of
blocks. The intensity of the pain restricts his abil-
ity to move to the point that sometimes he has to
lift his leg with his hands. He testified that in lift-
ing an object as light as a small breakfast room
chair he feels like he is pulling apart in the low
back.

"* * * * *

"* * * I am persuaded that claimant is in fact
a truly pain-ridden individual and while he has
expressed different reasons for refusing a myelo-
gram (including saying at one stage he didn't un-
derstand it whereas his testimony indicated that
he did in fact understand it) I do not construe this
as showing lack of motivation or lack of credibility
as to the reality of pain. I infer that there is a
constellation of reasons for claimant's resistance
including fear, naivete, and the overwhelming prob-
lem he visualizes for his wife if he should lose his
present capacity to function even temporarily,
much less permanently, since his wife is disabled by
rheumatoid arthritis to the point of being bedridden
a large part of the time and there are no other
family members.

"* * * [C]laimant's age of 49, his illiteracy, his
work history limited to heavy duty labor and his
probable unretrainability * * * suggest the very
real possibility that even if Mr. Suell took a myelo-

gram, and if a herniated disc were found, and there were successful surgical treatment he might nonetheless be unable to return to his regular heavy duty employment if he had the degree of physical limitation which can be projected as a normal residue to a laminectomy.

"Another factor which reinforces the reasonableness of claimant's refusal of myelography and possible surgery is the rather tentative diagnosis concerning the presence of a herniated disc made by some of the specialists who have examined or treated him. * * *

"* * * * *

"As to claimant's motivation to work I consider his stable work record as being indicative that he has good motivation; the fact that he remained on the job several days after the injury and has made several attempts to secure light work is likewise indicative of good motivation. Dr. Melgard commented on a couple of occasions that claimant wanted to go to work * * * and Clinical Psychologist Hickman commented, 'It is likely, however, that if an opportunity developed he would make a sincere effort to return to work' * * *.

"* * * * * *."

I agree with the referee's conclusion, affirmed by the Board, that claimant's inability to return to heavy labor, his motivation, his age, education, intellectual capacity (full scale I.Q. of 57), and unretrainability place him in the odd-lot category. *Deaton v. SAIF,* 13 Or App 298, 509 P2d 1215 (1973). While it is true that the medical testimony as to the extent of claimant's disability is not as strong as in some cases of permanent total disability, there was considerable lay testimony of his capabilities before and his incapacity after his injury. I consider this court should give careful consideration to the referee's findings, particularly where credibility is involved. The referee found:

"Prior to the industrial injury claimant had

no problem which minimized his ability to perform heavy duty employment. Lay witnesses who appeared in his behalf testified that prior to his injury he was a very energetic, hard working and responsible workman and that subsequent to his injury he has been incapable of performing any type of labor. *Claimant's own testimony, which I believe to be true, is that by reason of severe back pain and pain in the leg he is unable to perform any substantial amount of work. * * *"* (Emphasis supplied.)

I also think this court should give favorable consideration to the experience and expertise, in a case such as this, of the Workmen's Compensation Board which found him to be permanently and totally disabled. Since the Fund has failed to show that suitable employment is available for claimant, *Deaton v. SAIF,* supra, he is entitled to be rated as permanently and totally disabled. I would therefore reverse the circuit court's order.