Argued September 22, reversed October 13, 1975

HAMPTON, *Appellant, v.* STATE ACCIDENT
INSURANCE FUND (No. 89072), *Respondent.*

541 P2d 167

*Eric B. Lindauer,* Salem, argued the cause for appellant. With him on the brief were Clark, Marsh &
Lindauer, Salem.

*Janet A. Metcalf,* Assistant Attorney General, Salem, argued the cause for respondent. With her on
the brief were Lee Johnson, Attorney General, and
W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

Claimant at age 56 was injured through violent contact with a cow in connection with his lifetime work as a hired dairyman. He had a preexisting arthritic condition in his back and as a result of the traumatic injury, which occurred on September 11, 1972, he had three major surgeries and a myelogram. The surgeries included an excision of the L-4 and 5 disc, a fusion from the fourth lumbar vertebrae to the sacrum and an excision of olecranon spur and overlying bursa of the right elbow. On October 5, 1973 his attending orthopedist reported his condition to be medically stationary and recommended retraining because of his disability. He wears a back brace all of his waking hours. The Closing and Evaluation Division of the Workmen's Compensation Board awarded him 160 degrees or 50 percent for unscheduled disability to the back and 9.6 degrees or 5 percent for loss of the use of the right arm. Hearing was requested and after it was held the referee increased the award on the unscheduled back disability to 256 degrees or 80 percent and affirmed the arm disability award. Claimant and State Accident Insurance Fund both appealed. The Workmen's Compensation Board awarded claimant permanent total disability. SAIF appealed and the circuit court reversed the Board and reinstated the order of the referee. From the latter order claimant has appealed.

No one has pointed to an occupation which the evidence indicates claimant can do as a steady, ongoing job. See Deaton v. SAIF, 13 Or App 298, 509 P2d 1215 (1973). SAIF talks in its brief of the possibility of his working as a security guard or as a janitor. The Vocational Rehabilitation Division and the claimant have

explored the possibilities of both these occupations, and the evidence satisfies us that there is no probability of the claimant being accepted by any employer therein. He has testified that he is able to do light chores on the small farm which he owns. These chores include mowing the lawn, weeding the garden on his knees, light feeding of calves, etc. However, the evidence is that whenever harder work needs to be done he has to hire someone to do it:

> "Well, I have to have the hay put up, and the barn cleaned out, and sometimes when I haul animals there is a neighbor boy that helps me load and unload."

The Vocational Rehabilitation counselor testified that in view of the claimant's age, lack of education above the eighth grade, and lack of any experience except as a dairy hand the prospects of any regular employment are remote. He further testified that he found claimant to be highly motivated toward reemployment but his final testimony was:

> "No, I don't see any employability within the competitive labor market. I don't see any employability in terms of employment outside of—by an outside employer.
>
> "* * * * *
>
> "I don't think that he can work competitively with regular job hours in the dairy industry in any occupation that I am aware of. We have explored several facets of that * * *."

It was explained that the raising of a few cattle on the claimant's farm was about the most that could be expected in the way of productive employment from him. However, considering the profits to be anticipated and the cost to claimant of hiring the heavier work to be done, it is obvious from the testimony that any profit which he makes from this enterprise will be minimal.

A paragraph we quoted from the order on review of the Workmen's Compensation Board in *Krugen v. Beall Pipe & Tank Corp.*, 19 Or App 922, 926, 529 P2d 962 (1974), appears to us to be in point:

" '* * * * * *

" 'The evidence establishes that claimant's physical impairments are substantial. Even disregarding the claimant's age it is questionable that any employer with knowledge of his limitations would hire him for any kind of work and, with respect to the concept of earning capacity, the total inability to *gain* employment is just as totally disabling as the inability to *hold* employment.

" '* * * * * *' "

The case at bar is in contrast with *Yielding v. West Foods,* 23 Or App 79, 540 P2d 1018 (1975), in that in *Yielding* the medical evidence was meager and the claims of disability were based upon subjective factors; at bar the injury is based upon objective facts and the medical evidence in support of them is substantial. In *Yielding* the claimant was unwilling to try any kind of employment; at bar the claimant was eager to attempt rehabilitation at any occupation he could find in the area where he lives. He applied for and because of his disability was rejected as a janitor for an open position at the local school.

The pertinent provision of ORS 656.206(2) at the time this case was determined provided:

"The workman has the burden of proving permanent total disability status. Unless the medical evidence of a workman's unscheduled physical impairment, coupled with other relevant factors affecting his employability, establishes, prima facie, the workman's permanent total disability status, he must also establish his willingness to seek gainful and suitable regular employment."

This section of the statute was deleted by Oregon Laws 1975, ch 506, as was pointed out in n 1 in *Yielding*. Whether deletion of this subsection, which had been added only two years earlier by Oregon Laws 1973, ch 614, § 2, will make any substantive change in particular cases remains to be determined in such cases as arise after the deletion was effective (July 1, 1975). The wording of the subsection quoted above is substantially a summary of our holding in *Deaton v. SAIF*, 13 Or App 298, 509 P2d 1215 (1973). *Deaton* did not establish new case law in Oregon. It summarized the effect of a series of decisions which preceded it. There we said:

"* * * The consistent thread of all these opinions and others cited therein is that (1) motivation is not necessary to establish a *prima facie* case of odd-lot status if the medical facts when considered along with other factors, such as age, education, mental capacity and training of themselves support the claimed inability to work, and (2) evidence of motivation to seek and work at gainful employment is necessary to establish a *prima facie* case of odd-lot status if the injuries, even though severe, are not such that the trier of fact can say that regardless of motivation this man is not likely to be able to engage in gainful and suitable employment. The burden of proving odd-lot status rests upon the claimant." 13 Or App at 304-05.

We hold that the evidence at bar is such that the claimant has carried his burden of proving odd-lot status and SAIF has failed to overcome the status thus established by pointing to any job which he can perform available to the claimant in the area where he lives. The order of the circuit court is reversed and the order of the Workmen's Compensation Board is reinstated.

Reversed.