152

Argued September 22, affirmed October 20, 1975

SANDSTROM, *Appellant, v.* STATE ACCIDENT
INSURANCE FUND (No. 414-726), *Respondent.*

541 P2d 500

*Sidney A. Galton,* Portland, argued the cause for appellant. With him on the brief were Galton & Popick, Portland.

*Janet A. Metcalf,* Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

LANGTRY, J.

In this workmen's compensation case claimant appeals from a circuit court order which allowed her 48 degrees for 15 percent unscheduled loss of her left shoulder and 96 degrees for 50 percent loss of her left arm. She fell at work on September 7, 1972, breaking her left wrist. At that time she was 73 years of age. She returned to work on April 30, 1973 and continued working until January 18, 1974 when she was terminated by the store manager for Fred Meyer where she was working. She had become eligible for a

union-employer pension on November 23, 1973, at which date she had completed 10 years as a Fred Meyer employe.

Before termination she applied for disability compensation. In due course the claim was appealed through referee, Workmen's Compensation Board and circuit court before coming to this court. The referee in his final order allowed her 52.5 degrees for partial loss of the left arm and 48 degrees for unscheduled left shoulder disability. The Workmen's Compensation Board first affirmed the referee's finding and then on reconsideration, after reviewing *Krugen v. Beall Pipe & Tank Corp.*, 19 Or App 922, 529 P2d 962 (1974), rescinded its former order and allowed her permanent total disability. The circuit court order mentioned above thus reduced the compensation allowed by the Workmen's Compensation Board.

■ Claimant claimed she was terminated because she sought compensation and because of disability stemming from the broken wrist. A review of the extensive and detailed record fails to convince us she has carried her burden of proof in either regard. The store manager at the time of her termination positively testified that the cause of her termination was not because she could not physically do the work she was then assigned to do. He related it to customer complaints and her attitude. He indicated that her termination was delayed until she had 10 years of work for Fred Meyer, which made her eligible for a union-employer retirement pension. Her union representative testified that his investigation indicated no complaints about her physically being able to handle the job, and that he finally recommended to her that she discontinue trying to get her job back in that Fred Meyer was not wanting to keep on a person as old as she. Claimant herself testified that the manager at the time of her termination said nothing about her

being unable to do the work but that he said, "* * * they wanted to give the jobs to younger girls." Mr. Moose, who was the manager at the time of her injury and at the time she returned to work in April 1973, testified she was a freight girl in the dry goods area (who unpacked stock, marked it and put it on the shelf) before the injury but not after the accident. She was off work eight or nine months and after she returned in April 1973 she asked not to do any heavy lifting, "* * * normally by the time she got in [went to work in the morning], most of the boxes were unpacked. There might have been a few things she might have had to lift, but I never had any complaints."

■ Reports by two doctors, Dr. Campbell, who was her attending physician for the injury, and the other doctor, Dr. Cohen, were to the effect that she was still physically able to do the kind of work which was assigned to her after returning to work. The total effect of the evidence convinces us that it was her age, not her physical disability, that caused her termination.

■ The holding in *Krugen v. Beall Pipe & Tank Corp.*, supra, 19 Or App at 926, which influenced the Board to change its decision is summarized in the quotation:

" '* * * *

" 'The evidence establishes that claimant's physical impairments are substantial. Even disregarding the claimant's age it is questionable that any employer with knowledge of his limitations would hire him for any kind of work and, with respect to the concept of earning capacity, the total inability to *gain* employment is just as totally disabling as the inability to *hold* employment.

" '* * * * *,' "

If the medical facts establishing disability "when considered along with other factors, such as age, education, mental capacity and training" mentioned in *Deaton v. SAIF,* 13 Or App 298, 304, 509 P2d 1215 (1973), are present which make it impossible for a person to return to employment, such a person is included in the odd-lot category and is ordinarily entitled to permanent disability. The element that is missing in the case at bar is medical facts establishing disability. The claimant testified to her pain and disability, but also testified to facts which indicated her physical disability was far from total—indeed, her physical ability is surprising for a woman her age. The testimony of others substantiated her physical ability to do clerical work in a store. The preponderance of the evidence is to the effect that claimant was not so disabled that she could not satisfactorily do the kind of work she had done before her termination. The evidence preponderates to the conclusion that her inability to retain or gain employment relates more to her advanced years than it does to her physical disability.

Our review of the record supports the level of compensation adjudged by the circuit court.

Affirmed.