Argued June 28, affirmed August 8, 1977

# WALDROUP, *Respondent,*
## *v.*
# J. C. PENNEY COMPANY, *Appellant.*
### (No. 48865, CA 7822)
567 P2d 576

Charles R. Holloway, III, Portland, argued the cause for appellant. With him on the brief was Tooze, Kerr, Peterson, Marshall & Shenker, Portland.

Gregory L. Decker, Albany, argued the cause for respondent. On the brief were C. S. Emmons and Emmons, Kyle, Kropp & Kryger, Albany.

Before Schwab, Chief Judge, Thornton, Judge, and Fort, Senior Judge.

FORT, S. J.

**FORT, S. J.**

In this worker's compensation case the employer, J. C. Penney Company, appeals from the judgment of the circuit court requiring employer to accept claimant's aggravation claim and finding reasonable claimant's refusal to submit to a myelogram, surgery or other definitive treatment.

A chronological statement of the processing of this matter is necessary to an understanding of the issues presented. On March 26, 1971, claimant injured her low back on the job while reaching for a box on a top shelf. A claim for compensation benefits was filed with the claimant's employer, and the claim was accepted by the employer's carrier, Travelers Insurance Company. The claim was closed on November 2, 1971, with a 32-degree permanent partial disability award. Claimant requested a hearing, contesting the extent of permanent partial disability. As a result of the hearing, a referee found on June 22, 1972, that claimant's refusal to submit to a myelogram and possible surgery was reasonable, but since her condition could not be truly ascertained until the recommended myelogram and possible surgery were performed, the determination order was affirmed.

Claimant appealed the decision of the referee to the Workers' Compensation Board which by order on review dated January 12, 1973, affirmed the referee's opinion and order. The Board held that claimant's refusal to undergo a myelogram was unreasonable because such medical procedure was safe and the diagnostic information provided by a myelogram was important to assess her condition and risk with regard to surgery. Claimant appealed to the circuit court. In a judgment order dated December 13, 1973, the circuit court increased the permanent partial disability award to 40 percent, and the court's Findings of Fact dated December 5, 1973, concluded that the claimant did not act unreasonably in refusing to submit to a

myelogram and possible surgery.[1] No appeal was taken from that order.

On July 27, 1975, claimant filed a claim for aggravation, claiming that her condition had become aggravated and had deteriorated to the point where she was entitled to further permanent disability over and above the amount previously awarded. The aggravation claim was denied by the insurance carrier on August 26, 1975.

Thereafter claimant timely filed her Request for Hearing before a referee, raising several issues: "(1) Temporary total disability, (2) permanent partial disability, (3) permanent total disability, (4) appeal from [employer's] denial * * * of August 26, 1975, and (5) attorney's fees on denial." This hearing was begun March 2, 1976. On May 10, 1976, the referee entered his Findings, Opinion and Order, directing as follows:

"(1) The claim for aggravation is hereby referred back to the employer to be accepted for payment of all medical bills in relation to her back condition specifically the medical treatment furnished by Dr. Moore and by Dr. Lynch and when the claimant is medically stationary the matter will be submitted to the Evaluation Division for closure pursuant to ORS 656.268.

"(2) Claimant's attorney is hereby awarded the sum of $700 to be paid by the employer as and for a reasonable attorney fee."

In the course of his lengthy opinion, the referee found:

"* * * *I agree with Mr. McCullough* [referee of 1972 hearing] *and the Circuit Judge that refusal to submit to this surgery is not unreasonable* and claimant cannot be

---

[1] "* * *Her employer's insurance carrier contends that she should submit to a myelogram and that it is unreasonable not to do so. The Hearing Officer found that it was not unreasonable on her part to refuse this or surgery. This Court is of the same opinion. No doctor will guarantee survival from either procedure or that there will be no harmful effects. If the claimant has the right to refuse such diagnostic procedure or surgery, it is not just to penalize the claimant for exercising such a right. * * *"

denied benefits or compensation because of her refusal to submit to surgery." (Emphasis supplied.)

Thereafter on June 1, 1976, the claimant filed her Request for Review with and by the Workers' Compensation Board. On November 12, 1976, that Board entered its Order on Review reversing the referee and affirming the denial of the aggravation claim by the carrier and stating:

"The Board, on de novo review, disagrees with the conclusions of the Referee. It is the Board's finding that the claimant's refusal to submit to a myelogram and possible surgery render the evaluation of disability impossible. The Board is entitled to assume that proper surgical treatment would produce satisfactory and beneficial results. The claimant's condition may have worsened but the worsening has occurred because of her refusal to have her original injury treated in the manner recommended by her doctors. The claimant has the responsibility to make a reasonable effort to reduce her disability. She has failed to do so."

On December 6, 1976, the claimant filed her appeal to the circuit court and on January 25, 1977, that court entered its order reversing the Board and reinstating the referee's order. Included in its order was the following:

"IT IS FURTHER ORDERED that claimant shall not be penalized for refusal to accept myelogram and/or back surgery."

The employer appeals to this court from the circuit court order. Its principal contention is that the reason her condition has become aggravated is because claimant refuses to undergo a myelogram and, if recommended thereafter by her surgeons, corrective back surgery.

■ We note first that one effect of the employer's appeal on this ground is to seek at least in part to relitigate the identical contention which had previously, in the final 1973 order, been decided by the circuit court adversely to the Board and the employer. No appeal was taken by the Board or the employer from

[ 447 ]

the circuit court's 1973 finding and order that the claimant's refusal to undergo the myelogram and possible surgery resulting therefrom was reasonable. As such, that order and finding became as of that date the law of this case and cannot now be relitigated. In *Grunnett v. State Ind. Acc. Com.,* 108 Or 178, 185, 215 P 881 (1923), our court stated:

> "If an injured workman does not appeal from a final decision upon an original application for compensation but is satisfied with the award made by the commission on that application and afterwards files an application for compensation for alleged aggravation of disability he cannot upon appeal to the Circuit Court from an order denying such application for compensation for aggravation relitigate 'questions arising out of the facts, circumstances and conditions surrounding' the injury 'existing and known at the time of the decision upon the original application.' "

*See also Munger v. S.I.A.C.,* 243 Or 419, 422, 414 P2d 328 (1966); *Dodd v. Ind. Acc. Com.,* 211 Or 99, 107, 310 P2d 324, 311 P2d 458, 315 P2d 138 (1957); *Hoffmeister v. State I. A. Com.,* 176 Or 216, 221, 156 P2d 834 (1945).

■ Employer here contends that the refusal of the claimant to submit to a myelogram and surgery was not reasonable and that under ORS 656.325 not only should compensation have been suspended upon such refusal during the original claim, but that the same rule should apply concerning this claim for aggravation.

In *Grant v. State Industrial Acc. Com.,* 102 Or 26, 46, 201 P 438 (1921), our Supreme Court at length considered pertinent portions of that statute and concluded:

> "Our conclusion is that our statute should be construed to mean that the workman's right to compensation is to be suspended if he refuses to submit to an operation to which an ordinarily reasonable man would submit if similarly situated. Usually the conduct of a workman is a question of fact to be decided by the triers of the facts. * * *"

In that case, though all the medical evidence recommended surgery, because major surgery was involved and no positive assurance of success could be given,

the court held the issue of reasonableness of the refusal was properly submitted to the trier of facts. For a general discussion of the rules surrounding this problem, *see* 1 Larson, Workmen's Compensation Law 3-319 to 3-339, § 13.22 (1972). The pertinent language of the statutes, ORS 656.325(2), considered in *Grant* remains unchanged since that date.

We have already pointed out that the Board and the employer are bound as a matter of law to accept the December 1973 decision of the circuit court that the claimant's earlier refusal to submit to the myelogram or to surgery was reasonable. Examination of the medical evidence submitted at the aggravation hearing reveals nothing which has occurred since the order of December 1973 that would support reaching a different result now.

The employer relies on our recent decision in *Suell v. SAIF,* 22 Or App 201, 538 P2d 84 (1975), in which we held that refusal to submit to myelography was a significant factor to consider in determining the existence of permanent total disability. That case does not hold that a reasonable refusal within the meaning of ORS 656.325(2) to "submit to such medical or surgical treatment as is reasonably essential to promote" the worker's recovery is a bar to compensation. Such refusal is, as in this case, simply a factor to be considered in determining what treatment is "reasonably essential" within the statute.

The evidence here disclosed that one doctor continued to recommend myelography and surgery based thereon, as he did at the first hearing. Another doctor, a chiropractor, recommended continued conservative treatment and stated that she is "responding very satisfactorily to conservative management." The claimant remained adamant in her rejection of myelography and surgery but indicated that if the pain continued to increase, she might consider changing her refusal. There is no evidence that she has.

Affirmed.