Argued and submitted February 18; resubmitted In Banc June 8, reversed November 9, 1983, reconsideration denied February 24, petition for review denied March 20, 1984

(296 Or 638)

## In the Matter of the Compensation of Jack Reef, Claimant.

### REEF,
*Petitioner,*

*v.*

### WILLAMETTE INDUSTRIES,
*Respondent.*

(81-02391; CA A24943)

671 P2d 1197

Gerald C. Doblie, Portland, argued the cause for petitioner. With him on the brief was Doblie Francesconi & Welch, PC, Portland.

Emil R. Berg, Portland, argued the cause for respondent. With him on the brief was Wolf, Griffith, Bittner, Abbott & Roberts, Portland.

GILLETTE, J.

Richardson, J., concurring.

## GILLETTE, J.

Claimant appeals an order of the Workers' Compensation Board suspending temporary total disability benefits pursuant to ORS 656.325 because of his failure to submit to certain medical treatment. We reverse.

Under ORS 656.325(2)[1] and the relevant regulations, temporary total disability compensation may be suspended for any period of time during which a worker refuses to submit to treatment "reasonably essential to promote recovery." The procedure for obtaining a suspension is prescribed in OAR 436-54-286. The first step is for the employer or insurer to write to the worker, providing certain information and requesting that the worker submit to treatment by a specific date. After verifying that the claimant did not submit to the treatment, the insurer or employer may apply to the Workers' Compensation Department Compliance Division for consent to suspend compensation. If the worker makes no effort to have compensation reinstated within 60 days after the Compliance Division authorizes suspension, the insurer or employer may request closure.

At issue in this case is a Compliance Division suspension order. Claimant sustained a compensable back injury in December, 1979. His physician prescribed conservative treatment, including muscle relaxants, heat, massage and hospitalization for traction. He referred claimant to Dr. Melgard, who first saw him in June, 1980, and who requested and received authorization for a myelogram, which claimant was reluctant to undergo. That September claimant saw Dr. Becker, who recommended additional conservative treatment before a myelogram. Claimant's symptoms continued and, in December, Dr. Becker recommended a myelogram and surgery, if Dr. Melgard still agreed. In January, 1981, he wrote

---

[1] ORS 656.325(2) provides:

"For any period of time during which any worker commits insanitary or injurious practices which tend to either imperil or retard recovery of the worker, or refuses to submit to such medical or surgical treatment as is reasonably essential to promote recovery, or fails to participate in a program at a physicial rehabilitation center, the right of the worker to compensation shall be suspended with the consent of the director and no payment shall be made for such period. The period during which such worker would otherwise be entitled to compensation may be reduced with the consent of the director to such an extent as the disability has been increased by such refusal."

employer that the claim should be closed if claimant did not undergo the myelogram and surgery. Dr. Becker stated that claimant had apparently failed to keep a follow-up appointment with Dr. Melgard. In February, 1981, employer wrote claimant, stating its intention to request a suspension of benefits if he did not report to his doctor for a myelogram and possible surgery within two weeks. Claimant did not respond. On March 10, the Compliance Division suspended his benefits as of February 25. He was subsequently examined by a clinical psychologist, who reported to claimant's attorney that he would be a poor risk for surgery because of his extreme fear of any surgical procedure.

After a hearing, the referee upheld the Compliance Division, and the suspension order was affirmed by the Workers' Compensation Board.

Claimant makes two basic arguments for the invalidity of the suspension order: first, it was not issued in compliance with ORS 656.325 and applicable regulations, and, second, that his refusal to undergo the treatment was reasonable and that his reasonable refusal should be taken into account in determining whether the myelogram is "reasonably essential to promote recovery" under ORS 656.325(2). We consider these contentions in order.

As specified in OAR 436-54-286, part of the procedure the employer must follow before a suspension order can issue is:

"(1) The insurer or self-insured employer shall upon knowledge of a worker refusing to submit to such medical or surgical treatment as is reasonably essential to promote recovery, request in writing to the worker that such treatment be obtained. The letter to the worker shall explain:

"(a) the need for the recommended medical or surgical treatment;

"(b) that such treatment is considered essential by the attending physician to promote the workers' recovery;

"(c) that consent for such treatment be given to the attending physician by a specified date in the reasonable future; and

"(d) in prominent or bold-face type the paragraph:

" 'THE DECISION WHETHER TO RECEIVE MEDI-CAL OR SURGICAL TREATMENT CONSIDERED ESSENTIAL BY THE ATTENDING PHYSICIAN TO PROMOTE RECOVERY IS A DECISION OF THE INJURED WORKER. FAILURE, HOWEVER, TO GIVE CONSENT BY THE DATE INDICATED OR FAILURE TO ACTUALLY RECEIVE SUCH TREATMENT SHALL RESULT IN SUSPENSION OF YOUR COMPENSATION BENEFITS AND POSSIBLE REDUCTION OF ANY PER-MANENT DISABILITY AWARDED PURSUANT TO ORS 656.325 AND OAR 436-54.'

"'* * * * *

"(3)   The insurer or self-insured employer shall provide documentation to adequately demonstrate that the medical or surgical treatment is reasonably essential to promotion of the worker's recovery and that the need for such medical or surgical treatment has been fully explained to the worker by the attending physician. Documentation should consist of doctor's reports, copies of correspondence, reports of consultation on the medical or surgical treatment recommended or any other written evidence which demonstrates the recommended treatment is reasonably essential."

■      Although the question is a close one, we agree with employer and the Board that the evidence does demonstrate that the recommended treatment was "reasonably essential to promote recovery."

Employer depends principally on the opinions of Drs. Melgard and Becker to support the suspension order. In June, 1980, Dr. Melgard, after a conservative treatment program, thought claimant probably had a spinal stenosis and requested authorization for a myelogram.[2] A month later he and

_____

[2] Dr. Melgard's report to claimant's regular physician concluded:

"IMPRESSION: This patient has a subluxation at L4-5, and probably a spinal stenosis. Some of this may be related to his old horse injury that he has probably aggravated, with his injury of December 7, 1979. It is possible he may have subluxed it to some extent with his recent injury, but he doesn't have a lot of room for the lower lumbar nerve roots. He has not really done anything, and I suspect as he gets to be more active he is going to have more and more trouble. He is not anxious to have a myelogram or anything else at the present time. I am going to send him home and be as active as he can, and see him in thirty days. In the mean time I am going to write to Willamette Industries in which a copy of this letter is being sent requesting authorization for myelogram.

"I think that the patient has a spinal stenosis. I think it is related to his present injury of December 1979. I think he may very well come to decompression."

claimant discussed the possibility of a myelogram to determine whether or not he did have a spinal stenosis. The doctor's records contain the following entry:

"This patient and I had a long talk today. He understands the ramifications of possible surgery and myelography. I have told him that I can't guarantee him anything, but maybe if he wants to go ahead with the myelogram, we will see if he does have a spinal stenosis. The carrier has authorized it, but I don't really think he will go ahead with it. We will arrange this as soon as he lets us know. I have told him that the insurance carrier will not let his claim stay open indefinitely."

There are no further reports in the record from Dr. Melgard. Dr. Becker, who at first suggested further conservative treatment, wrote to employer in December, 1980:

"* * * It was felt that with continuing radicular complaints down as far as the left foot, despite the patient's sincere efforts to control his symptoms conservatively, if Dr. Melgard still agrees, lumbar myelogram and surgery would be the next move."

Finally, on January 22, 1981, he wrote:

"If Mr. Reef chooses not to consider myelogram or surgery, then I feel that all has been done that can be done for Mr. Reef from an orthopedic standpoint, and I would suggest that his claim be declared medically stationary and his claim closed accordingly."

There is nothing further in the record regarding the recommendation of myelography and surgery. However, we think what there is suffices. As we see it, the doctors' recommendations of a myelogram can only be reasonably construed to mean that they believe that it is reasonably necessary for claimant to have the myelogram (and, if the myelogram indicates what they believe it will indicate, the subsequent surgery) in order to get better.[3] We hold that the evidence

---

[3] We consider this a fair, common sense reading of the recommendations. By contrast, the specially concurring opinion's construction of the recommendations is unrealistic and hypertechnical. We suspect that it would come as a great surprise to Drs. Melgard and Becker to learn that, in the view of some, the myelogram each recommended was not "reasonably essential to promote recovery" because they did not use those magic words in making their recommendations.

establishes that the myelogram is "reasonably essential to promote recovery."[4]

■      Our conclusion that the myelogram was "reasonably essential to promote recovery" brings us to the second question posed by this case: May a claimant who is receiving temporary total disability payments reasonably refuse[5] to accept such treatment and still be entitled to receive temporary benefits?

In urging a negative answer to this question, employer argues, in essence, that a claimant must either undergo "reasonably essential" treatment or, if he refuses, suffer suspension of time loss benefits until he either complies

---

[4] The Board, in affirming the suspension order, said:

"* * * The suspension order terminated claimant's right to temporary total disability effective February 25, 1981. Had a Determination Order instead been issued, from the available information it appears that claimant's right to temporary total disability would have ended on January 22, 1981. Any error committed by following the suspension order route rather than the Determination Order route was harmless."

Employer argues that, if we agree with either of claimant's contentions, we can uphold the suspension on the basis of harmless error. The difficulty with that position is that it sought suspension of temporary total disability benefits and did not request a determination order. Had a determination order been requested, the issues incident to such a request could have been litigated. It is not at all certain on this record whether a determination order would have issued, what the extent of disability would have been or what the date for termination of temporary total disability benefits would be. Employer, having selected the procedure for suspension of benefits, is not in a position to contend that had a determination order been sought claimant would not have been better off. The validity of the suspension order is the only issue before us, and the possible consequences of a determination request were not litigated below.

[5] The *reasonableness* of the refusal—as distinguished from its *legal effect*—would normally be a separate factual issue, but is not presented in this case. At the hearing before the referee, the following colloquy occurred:

"MR. DOBLIE [claimant's attorney]: Yes. I think you asked if we'd be putting on evidence and, based upon my understanding that counsel has stipulated that for the purpose of your decision the evidence would support that Mr. Reef's refusal to have a myelogram and laminectomy was reasonable and that term is used in the cases, then there's no — we would have no further evidence to present.

"REFEREE: Do you wish to so stipulate, Mr. Goodman? [Defendant's attorney] I think you already did, but I'm not sure if we were on or off the record, because we've been on and off so much.

"MR. GOODMAN: I would stipulate that the reasonableness of Mr. Reef's decision is irrelevant to this particular administrative rule and that the evidence in the record that I have right now does not, in any way, indicate it was an unreasonable reason."

The factual question being resolved, the legal issue remains.

or his case is closed by a determination order. The reason for refusing, employer argues, is irrelevant.

On the other hand, claimant argues that, under ORS 656.325(2), a reasonable refusal to submit to treatment is no bar to receiving time loss benefits, citing *Waldroup v. J. C. Penney Company,* 30 Or App 443, 448, 567 P2d 576 (1977), and *Clemons v. Roseburg Lumber Company,* 34 Or App 135, 578 P2d 429 (1980). Neither case is dispositive. Our statement in *Waldroup* to the effect that a refusal like that in this case is "simply a factor to be considered in determining what treatment is 'reasonably essential' " was *dictum;* the case was resolved on other grounds. *Clemons* is a case of extent of permanent disability in which, exercising our authority as fact finder, we found a claimant's refusal to undergo a transaxillary rib resection to be reasonable under all the facts of that case.

That the foregoing cases are not strictly in point does not mean, however, that they are not helpful. The mere fact that a particular medical procedure may help cannot be viewed *in vacuo.* What side effects will or may arise? What is the likelihood of improvement? Concerning this kind of case, we adopt the following statement from *Clemons:*

> "The test * * * is whether the refusal is reasonable. 1 Larson, Workmen's Compensation Law, § 13.22 at 3-398 (1978). Reasonableness is a question of fact. *See, Grant v. State Industrial Acc. Comm.,* 102 Or 26, 46, 201 P 438 (1921). The relevant inquiry is whether, if compensation were not an issue, an ordinarily prudent and reasonable person would submit to the recommended treatment. Such a determination must be based upon all relevant factors, including the worker's present physical and psychological condition, the degree of pain accompanying and following his treatment, the risks posed by the treatment and the likelihood that it would significantly reduce the worker's disability. *Grant v. State Industrial Acc. Comm.,* 102 Or at 45; *see* 1 Larson, Workmen's Compensation Law, *supra.*" 34 Or App at 139.

To hold that ORS 656.325(2) requires that a claimant submit to any otherwise appropriate medical procedure in spite of having reasonable grounds for refusing to do so would turn a salutary statutory principle into a draconian one. We decline to do so. We hold that, under ORS 656.325(2), a claimant may not be denied benefits if he reasonably refuses

treatment that is "reasonably essential to promote recovery." *See Grant v. State Industrial Acc. Com., supra.*

■     Because claimant's refusal was reasonable, the Board's decision affirming termination of claimant's benefits under ORS 656.325(2) was in error.

Reversed.

**RICHARDSON, J.,** concurring.

I concur in the decision to reverse the Workers' Compensation Board's order, but for a different reason. The lead opinion says:

> "Although the question is a close one, we agree with employer and the Board that the evidence does demonstrate that the recommended treatment was 'reasonably essential to promote recovery.'" 65 Or App at 370.

The opinion suggests that this concurring opinion views the medical evidence in an unrealistic and hypertechnical manner, because the doctors did not use the "magic words" "reasonably essential to promote recovery." I do not suggest the ghoulish possibility that the doctors suggested diagnostic surgery because they had nothing else to do. I do suggest that, although the "magic words" were not incanted, the concept of the statute, ORS 656.325(2), was not met by employer's proof.

ORS 656.325(2) relates to suspension of temporary total disability benefits. There is no question that, aside from the possible suspension of benefits for refusal to submit to the recommended surgery, claimant is entitled to temporary total disability benefits. Suspension of those benefits takes away claimant's means of living until a determination of his permanent benefits. In that context, suspension of benefits ought not to be lightly regarded. An employer seeking suspension of temporary benefits has the burden of establishing that the recommended medical procedure is "reasonably essential to promote recovery." That phrase must have some meaning beyond simply a recommended procedure.

Comparing ORS 656.325(2) with ORS 656.325(4), the phrase "reasonably essential to promote recovery" takes on added meaning. ORS 656.325(4) provides essentially, that if an injured worker has failed "to follow medical advice from the attending physician," benefits awarded may be reduced.

*See Clemons v. Roseburg Lumber Co.,* 34 Or App 135, 578 P2d 429 (1978).[1] Reduction of permanent benefits is far different than total suspension of benefits otherwise payable. The different elements an employer must establish reflect the relative severity of the different results under the two subsections.

We should not equate recommended medical procedures with procedures "reasonably essential to promote recovery." The lead opinion appears to say that, because the doctors recommended the diagnostic procedure, it therefore is reasonably essential to promote recovery. This perhaps is based on an assumption that the doctors would not make such a recommendation unless it was reasonably essential. I am not privy to the vast array of medical procedures recommended by physicians in response to a particular medical problem. I am, however, unwilling, in the light of the statutory language, to affirm a suspension of benefits because a physician merely recommends a medical procedure. If a recommended procedure is the same as a procedure reasonably *essential* to promote recovery, then the legislature unnecessarily used different criteria in ORS 656.325(2) and 656.325(4). The difference is essential to the legislative scheme reflected in the two statutes, but it is blurred to extinction by the lead opinion.

In this case employer has not met its initial burden of establishing that the recommended procedure is reasonably essential to promote recovery. All that can be discerned from the sparse medical record is that the doctors, out of frustration in being unable to diagnose claimant's condition, recommended a myleogram to determine if claimant has a spinal stenosis. The reports state that claimant probably has spinal stenosis. Much is left to conjecture as to what spinal stenosis is and whether corrective surgery would necessarily follow or whether such surgery would improve claimant's condition or merely alleviate his pain. Employer submitted the reports as the basis for requesting suspension of benefits and there is no indication that the doctors were presented with the question whether the recommendations were based on a conclusion that surgery was reasonably essential to promote claimant's

---

[1] *Clemons* was decided as a matter of proof as to the extent of disability. It was decided before the effective date of the present version of ORS 656.325(4), but apparently reflects the analysis appropriate under ORS 656.325(4).

recovery. We should not supply the deficient evidence by inferring that the doctors must have been addressing the statutory standard. The lead opinion suggests the doctors would be surprised at the conclusion reached in this concurring opinion. The doctors may well be surprised by what they were deciding in recommending a myleogram as "the next move."

I conclude that employer has not met its burden to establish that the requested myleogram is reasonably essential to promote claimant's recovery. I would not reach the other issues decided.

Buttler, Rossman and Newman, JJ., join in this concurring opinion.